El Pueblo de Puerto Rico, demandante y apelado, *v.* Francisco Flores Cintrón, acusado y apelante.

Núm. 9943.—*Sometido:* Junio 7, 1943. *Resuelto:* Noviembre 4, 1943.

*Leopoldo Tormes García,* abogado del apelante; *R. A. Gómez, Fiscal del Tribunal Supremo,* abogado de El Pueblo, apelado.

El Juez Presidente Interino Señor Travieso emitió la opinión del tribunal.

Francisco Flores Cintrón fué denunciado ante la Corte Municipal de Guayama por un delito de daños maliciosos cometido al matar "maliciosamente y cruelmente" una cerda de Antonio Ortiz. La corte del distrito, en grado de apelación, declaró al denunciado culpable y lo condenó a pagar una multa de veinticinco dólares.

El acusado apelante alega que la evidencia no demuestra la existencia del elemento "malicia", necesario para la comisión del delito que prevé y castiga el artículo 514 del Código Penal que fué el que se le imputara.

La prueba de cargo consistió en las declaraciones de Antonio Ortiz, V. M. Aponte y D. Mendoza. El primero, dueño del animal que fué muerto, dijo que estaba encargado de una finca de J. Farraró que linda con otra del doctor Cobián, situadas ambas en el barrio Ancones de Arroyo; que tenía una cerda amarrada en la finca de Farraró que se soltó cuando un empleado del doctor Cobián fué a buscar a dicha finca un buey de su patrono acompañado de un perro; que llamó la atención del empleado sobre el daño que podía causar la cerda suelta y el empleado le contestó que se despreocupara, que estaban arando; que dos días después la cerda fué muerta dentro de la finca de Farraró por el acusado obedeciendo órdenes del encargado de la finca del doctor Cobián, sin estar ocasionando daño alguno, cayendo entre los alambres que separan ambas fincas.

V. M. Aponte es un policía insular que fué a investigar el hecho. Dijo que vió la mancha de sangre que dejó la cerda debajo de los alambres de la cerca y que observó que los terrenos del doctor Cobián adyacentes a ésta se estaban arando.

Domingo Mendoza, un muchacho de catorce años, vió al acusado apuntar una carabina contra la cerda que "estaba en lo de Farraró", disparar y matarla, brincando la cerda y cayendo en la orilla de los alambres de la cerca.

La prueba de dascargo consistió en las declaraciones de J. Lasanta, L. Rivera, J. Irizarry, F. Valentín y A. Santiago. Lasanta dijo que "los cerdos" hacían daño en las plantaciones de cañas comiéndose las semillas que se sembraban y que estuvo en casa de Ortiz a darle razón para que los recogiera. Fué el empleado del doctor Cobián que estuvo en busca del buey en la finca de Farraró y admite que la cerda de Ortiz estaba amarrada y se espantó con el perro, soltándose. Como a los tres o cuatro días ocurrió el hecho denunciado. Vió más cerdos en la finca de Farraró, uno amarrado y otros sueltos.

Rivera manifestó que fué con Lasanta a casa de Ortiz a llamarle la atención sobre el daño que hacían los cerdos.

Irizarry pudo observar en varias ocasiones el daño que hacían los cerdos en las siembras de caña del doctor Cobián.

Valentín se expresó así:

"El día a que se refiere la denuncia estaba yo trabajando con el Sr. Ambrosio Santiago en propiedad del Sr. Cobián y cuando llegamos por la mañana a trabajar habían ciertos lechones por allí haciendo daño contra la semilla que habíamos sembrado el día antes . . . y entonces mandó un peón de los que había. . . a sacarlos; entonces los sacaron y salieron por un sitio y entonces entraron por otro sitio, volvieron otra vez como a la media hora y permanecieron haciendo daño, volvían otra vez y el Sr. Ambrosio mandaba otro peón a sacarlos y los sacaban, pero que ya cuando eran como las once y media del día que iban a ser las doce, que íbamos a almorzar un poco distante, retirado, el Sr. Ambrosio dijo: 'estos animales van a seguir haciendo daño, así es que vete, Francisco, busca la escopeta, hay que matarlos, ya se le han dado muchas razones y vamos a almorzar lejos y ellos van a seguir haciendo daño en lo que venimos' y entonces el muchacho fué y buscó la escopeta."

Santiago, el encargado de la finca del doctor Cobián, se refiere a los daños que hacían los cerdos y al aviso que ordenó

que se diera a su dueño. Dijo que el día del suceso los cerdos hacían daño y los mandó sacar en la mañana dos o tres veces.

"Entonces yo mandé a buscar una escopeta a casa con un peón de los que estaban trabajando y me trajeron la escopeta con un cartucho y mandé a éste a matarlo y desde ese día no volvieron los puercos. P. ¿En qué sitio preciso estaba la cerda ese día? R. En la finca del Dr. Cobián, dentro de la caña. P. ¿Qué hacía? R. Osando la semilla que estaba sembrada. P. ¿Dónde cayó esa cerda muerta? R. Como un metro poco más o menos antes de la empalizada.''

¿Es esa prueba suficiente? La corte de distrito entendió que lo era por los siguientes motivos:

"La corte entiende que la ley en relación con esta materia es que el solo y simple hecho de penetrar un animal en una finca ajena aunque cause algún daño, sin estar acompañado de otros hechos, no es por sí suficiente para negar la demostración prima facie de malicia; así también, por el contrario, cuando se demuestran hechos repetidos y actuaciones para impedir esos hechos a tal extremo que puedan producir el agotamiento de la paciencia y la imposibilidad de evitar mayores daños y subsiguientes daños y el individuo ha actuado bajo esa impresión, actúa movido por un impulso justificado que elimina el factor malicia. Aquí nos encontramos que...el animal víctima de un disparo hecho por el acusado...estuvo amarrado y que se soltó por causas ajenas a su dueño y más bien por causas de las cuales era culpable uno de los empleados del dueño de la finca. Indudablemente que para que eso tuviera algún peso en relación con el estado mental del acusado y su responsabilidad de respetar ese animal por haber sido culpa del dueño de la finca, se necesitaba que él hubiese tenido conocimiento de ello; de modo que no habiendo tenido conocimiento el acusado del hecho...no afecta... Pero, por otro lado nos encontramos que no se ha probado así tampoco que el acusado tuviera conocimiento de todas estas gestiones y de todos los hechos anteriores. Los testigos que han declarado ante este tribunal, han declarado sobre lo que ellos saben, sobre lo que ellos han visto y sobre lo que ellos han hecho, las veces que han tenido que sacar los puercos y las veces que han tenido que avisar. De modo que esta corte, aun cuando le diera crédito a esa prueba, no podría admitir o aplicar el contenido de esa prueba al estado mental del acusado porque no se ha probado que el acusado conociera todos y cada uno

de esos hechos o por lo menos suficientes de esos hechos para que, en caso de ser creídos por la corte, pudiera la corte juzgar que el conocimiento de esos hechos había afectado al estado mental del acusado en tal forma que eliminase el elemento malicia, según resulta en el caso de·*El Pueblo* v. *Valdés* del tomo 23 D.P.R. 713. La corte, por lo tanto, cree que el acusado es culpable del delito que se le acusa, o sea, de infracción al artículo 514 del Código Penal.''

Llamó entonces la defensa la atención de la corte hacia el hecho de que el acusado había actuado por orden del mayordomo, un hombre de 66 años, con un brazo inútil, y el juez manifestó:

''La corte pensó en eso y lo tuvo presente; la corte tampoco ha dicho que haya creído la prueba de la defensa, la corte no ha entrado en el juicio de la prueba, pero de dársele crédito a la prueba de la defensa, esa prueba podría haber beneficiado al mayordomo que dió la orden, pero no al empleado que la obedeció; si el mayordomo tiene conocimiento de esos hechos es él quien debe actuar personalmente, no ordenárselo a un subalterno que no tiene conocimiento de esos hechos y que en su mente él comete el delito porque solamente él presenció un acto aislado. El elemento malicia es una cosa interna, mental, del individuo en particular que comete el acto y un individuo, no importa hasta dónde llegue su grado de obediencia a sus superiores, nunca está obligado a obedecer ninguna orden que le lleve a la comisión de ningún delito.''

Sostiene el apelante que procede la revocación de la sentencia porque se dictó contra el acusado sin que la corte entrara en la apreciación de su prueba, como era su deber.

El criterio de la corte sentenciadora fué el de que no necesitaba resolver si era o no cierta la prueba aportada por el acusado sobre los daños anteriores causados por los cerdos de Ortiz y sobre las advertencias hechas a su dueño, porque no se demostró que el acusado tuviera conocimiento de ello y por tanto en nada pudieron esos antecedentes influir en su ánimo al dar muerte al animal, y nada contrario a la ley encontramos en ese criterio.

El acusado no era dueño de las siembras que se dicen dañadas por los animales de Ortiz. Tampoco encargado de

vigilarlas. No tenía responsabilidad alguna en relación con las mismas. Era un trabajador que recibió una orden de matar que no tenía que obedecer y mató. No lo hizo en defensa de su propiedad, ni en la de propiedad alguna puesta bajo su custodia o vigilancia. Mató un animal que no era suyo sin motivo justificado alguno y es responsable de su acto.

El delito, en la modalidad imputada en este caso concreto, consiste en matar maliciosamente algún animal perteneciente a otro. Art. 514 del Código Penal.

Según ese propio cuerpo legal, las palabras "malicia", "maliciosamente", denotan la comisión de un acto dañoso, intencionalmente, sin justa causa o excusa—la esciente infracción de la ley, en perjuicio de otro. Art. 559, número 4.

Y aquí la prueba demostró que el acusado actuó voluntariamente, ya que no estaba obligado a obedecer la orden que se le diera, y el repetido código en el número uno del último artículo citado, dice que voluntariamente, cuando se aplica a la intención con que se ejecute un acto, implica simplemente propósito o voluntad de cometerlo. Y que el propósito del acusado fué el de matar sin justa causa o excusa, es tan claro que no puede ni siquiera discutirse.

Todo cuanto pudo apreciarse en favor del acusado, lo apreció la corte al imponerle una multa de veinticinco dólares, cuando el delito puede en propios casos aparejar pena de cárcel por dos años o multa de doscientos cincuenta dólares o ambas penas. Art. 16 del Código Penal. Sostener que está exento de responsabilidad sería ir demasiado lejos.

*Debe confirmarse la sentencia apelada.*